IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11CV00025-RLV

| | |
|---|---|
| DAVID GEORGE,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ROUSH & YATES RACING ENGINES,<br>LLC,<br>　　　　Defendant. | MEMORANDUM and ORDER |

**THIS MATTER** is before the Court on Defendant Roush and Yates Racing Engines, LLC's ("RYRE") Motion to Dismiss Plaintiff's first claim (Doc. 9), filed May 31, 2011, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I. BACKGROUND

David George ("Plaintiff") commenced this action in March 2011 and claims he was fired from his previous employment with Defendant in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). At this procedural stage, the following facts as pleaded by Plaintiff are taken as true.

Plaintiff was hired in February 1999 as a Managing Engineer for Robert Yates Racing, which later merged with another entity to form Defendant RYRE. RYRE "designs, engineers, and builds high-performance racing engines used in automotive racing, including NASCAR racing." (Compl. 5.) In 2002, Plaintiff accepted continued employment as Technical Director, and "the vast majority of the components used in RYRE's engines were sourced by Plaintiff and supplied by suppliers with whom he had carefully cultivated strong working relationships." (Compl. 18.) Plaintiff allegedly excelled in this position for the majority of his employment and received "bi-

1

annual performance bonuses, regular pay raises above and beyond those stated in the contract, and numerous communications indicating that he was performing his duties extremely well." (Compl. 13.)

In July 2007, Plaintiff was involved in an automobile accident, rupturing a disc in his lower spine and requiring multiple surgeries. The injuries impaired Plaintiff's ability to walk, sit, sleep, and bend. Plaintiff resumed work during recovery, "working from lobby sofas when he could not sit upright" and "roll[ing] himself around the building in an office chair." (Compl. 23.) Plaintiff continued to experience pain from the injury, and following his second surgery in mid-2008, Plaintiff requested and was granted an accommodation to allow him to come into work at 9:00 A.M. each day, two hours later than usual. He stayed at work late to compensate for the later start and worked from home at night and on weekends. The accommodation allowed him time in the morning to do therapy exercises and deal with gastrointestinal issues that resulted from his injuries (Compl. 33.)

Plaintiff alleges that Yates "frequently made derogatory remarks about his adjusted schedule" and would get "very irritated with Plaintiff's lack of mobility and complain about his need to use e-mail to communicate instead of physically locating Mr. Yates." (Compl. 38.)

Early in the 2009 racing season, RYRE's teams suffered numerous mechanical engine failures. On March 22, the sixth such engine failure occurred during a NASCAR race. A meeting was scheduled for that evening, but Plaintiff had a pre-planned business dinner at his home with a supplier's CEO and later determined he "was in no shape to drive to the office." (Compl. 53.) He contacted a senior engineer for RYRE to discuss the problem, and the engineer "said that the group had the situation covered, but promised to call or email Plaintiff if he needed anything." (Compl. 54.) After diagnosing the source of the engine failures as valve problems, a plan for an

2

Case 5:11-cv-00025-RLV -DCK   Document 16   Filed 08/16/12   Page 2 of 10

alternative valve was established. The following morning, Plaintiff received an email from RYRE's CEO Doug Yates, which stated the following:

> You know yesterday when we lost our 6th engine of the season I though [sic] you would call me to check and see what had happened and then we were here until two o' clock this morning and back in at six I figured you would have at least come in last night or been here this morning so we can make a plan to get to the track in two days and you didn't. I was disappointed seeing how you are supposed to be running this for our company. You did not even have a back up plan ready in case this happened. I am really not mad at you it is just time for our company to do something different. We have lost confidence in you and it is time for a change. We have a huge responsibility building engines and last night you demonstrated you [sic] lack of caring about our company.

(Compl. 61.) RYRE formally terminated Plaintiff's employment later that day. Plaintiff claims that, contrary to Yates's email, he did have a backup plan, and he alleges in his Opposition Brief that Yates himself had taken over intake valve supply decisions from Plaintiff prior to the 2009 engine failures. Plaintiff timely filed with the EEOC a charge alleging discrimination in violation of the ADA. The EEOC dismissed Plaintiff's charge and issued Plaintiff a right-to-sue letter.

## II. STANDARD OF REVIEW

The central issue in resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief. *See Francis v. Giacomelli,* 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion to dismiss, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 253 (4th Cir. 2009); *Giacomelli,* 588 F.3d at 190–92. Although the Court accepts well-pleaded facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Consumeraffairs.com,* 591 F.3d at 255.

The complaint need not contain detailed factual allegations, but "a formulaic recitation of the elements of a cause of action will not do." *Id. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. *See Consumeraffairs.com*, 591 F.3d at 256. In evaluating whether a claim is facially plausible, courts must use "judicial experience and common sense." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).

The ADA makes it unlawful for an employer with fifteen or more employees to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112. Most of the federal circuits, including the Fourth Circuit, have adhered to a "motivating factor" standard of causation for ADA claims. *See Baird v. Rose,* 192 F.3d 462, 470 (4th Cir. 1999); *Lewis v. Humboldt Acquisition Corp., Inc.*, No. 09-6381, 2012 WL 1889389 at *2 (6th Cir. May 25, 2012) (reversing its previous "sole reason" standard and holding that a plaintiff alleging discrimination under the ADA must only prove that the discrimination was a motivating factor for the adverse action); *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (per curiam) ("The proper causation standard under the ADA is a 'motivating factor' test."); *McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996).

In 2002, the United States Supreme Court held that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the first prong of the *McDonnell Douglas* burden-shifting standard.[1] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The *McDonnell Douglas* framework – which requires the plaintiff to show (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination – is an evidentiary standard, not a pleading requirement."). The Court's holdings in both *Twombly* and *Iqbal*, however, called *Swierkiewicz* into doubt, and the Fourth Circuit has recognized its overruling. *See Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) ("The standard that the plaintiffs quoted from *Swierkiewicz,* however, was explicitly overruled in *Twombly.*").

Under this standard, then, Plaintiff must allege sufficient facts plausibly to raise a prima facie case of wrongful termination under the ADA. This requires Plaintiff show that he (1) was a qualified individual with a disability, (2) was discharged, (3) was fulfilling his employer's legitimate expectations at the time of discharge, and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

---

[1] The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework provides a tool for analyzing motions for summary judgment in disparate treatment claims where the employer's motive is at issue. The first prong of the analysis requires the plaintiff make out a prima facie case. Once the plaintiff has done this, the defendant bears the burden to proffer a non-discriminatory reason for the termination. Finally, the plaintiff must show that the employer's response is merely a pretext for action motivated by discrimination.

5

# III. DISCUSSION

Under the less rigid "motivating factor" standard and taking the allegations in the aggregate, Plaintiff has alleged sufficiently that he was terminated on the basis of his disability. Accepting the facts in the complaint as true and viewing them in the light most favorable to Plaintiff, as is required by the procedural posture of the case, Plaintiff's factual allegations of unlawful discrimination are adequate to make a prima facie showing of unlawful discrimination.

**A. Plaintiff's factual allegations support a reasonable inference of unlawful discrimination.**

Plaintiff's Complaint "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. While Plaintiff fails to specify when and under what circumstances the derogatory remarks were made regarding his accommodation, they nonetheless, at this stage of litigation, provide support for the allegation that Plaintiff's disability was a motivating factor in the termination. *See E.E.O.C. v. Town & Country Toyota, Inc.*, 7 F. App'x 226 (4th Cir. 2001) ("Contradictions between an employer's proffered explanation and the contemporaneous statements of the employer are convincing evidence of pretext."). It is true, as Defendant suggests, that Plaintiff ultimately bears the burden of showing a connection between the employment action and the alleged remarks. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) ("Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action."). However, the Fourth Circuit in *Warch* relied on a case determined at summary judgment to support this point. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) ("*To survive summary judgment* on the basis of direct and indirect evidence, Brinkley must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the

6

employment action." (emphasis added)). It is, thus, inappropriate to apply a summary judgment standard at the pleading stage.

In its Motion to Dismiss and supporting memorandum, Defendant contends that an inference of non-discrimination may be drawn from Plaintiff's Complaint. Plaintiff acknowledges that Defendant continued to employ him for nineteen months after the injury and concedes that, with full knowledge of the alleged disability and after the accommodation was granted, Defendant asked Plaintiff to stay on as Technical Director of RYRE through the 2010 racing season. That this request came more than a year after the injury and months after the accommodation may show evidence of non-discrimination. In *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991), an ADEA case, the Fourth Circuit recognized a "strong inference . . . . that discrimination was not a determining factor" in a discharge decision when (1) the person who hired the plaintiff knows of the plaintiff's protected condition when the hiring decision was made, (2) the person who hired the plaintiff also fires him (3) within a "relatively short time span following the hiring," and (4) the employer advances a legitimate and nondiscriminatory reason for the discharge. *See id.* The Court reasoned that "[i]t hardly makes sense [for an employer] to hire workers from a group [it] dislikes, only to fire them once they are on the job." *Id.* at 797. The existence of a legitimate, non-discriminatory reason for an employee's termination thus creates a compelling inference that the decision was not motivated by discrimination. *See id.* at 798.

However, while this "same actor inference" from *Proud* was extended to ADA cases in *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 214 (4th Cir. 1994), it has not been applied to a motion to dismiss for failure to state a claim. At the pleading stage, there is no exchange of burdens of proof, as contemplated by *McDonnell Douglas*. *See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (stating that the relevance of the same individual both hiring and

7

firing the employee as an inference of non-discrimination "comes at the third stage of the [*McDonnell Douglas*] analysis."). Thus, evidence tending to show an alternative to discrimination is inappropriate at this posture of the case.

Plaintiff implies that Yates's proffered reason for termination was pretextual.[2] The Complaint alleges that, contrary to Defendant's email, Plaintiff had come up with a backup plan. Plaintiff also asserts in his Opposition Brief that Yates himself had taken over intake valve supply decisions from Plaintiff prior to the 2009 engine failures. These pleaded facts bolster a reasonable inference of discrimination and are adequate in this stage of litigation to counter any "obvious alternative explanation" Defendant sets out in his email. *Twombly*, 550 U.S. at 567.

**B. Plaintiff alleges sufficiently that he was fulfilling his employer's legitimate expectations at the time of discharge.**

Defendant does not attempt to counter Plaintiff's performance record leading up to the engine failures but rather argues that Plaintiff may not point to this prior success as sufficient to meet his employer's legitimate expectations *at the time of discharge*. It is true that Plaintiff's accomplishments early in his career with RYRE are insufficient on their own to show that he was meeting RYRE's expectations. *See Harris v. Cmty. Alternatives*, 5:11-CV-52-D, 2011 WL 2111851 (E.D.N.C. May 26, 2011) (dismissing discrimination claim despite allegations that plaintiff had received "great evaluations" before problems emerged). Plaintiff, however, alleges that he received praise less than a day before the sixth engine failure and that engine failures are not uncommon. Defendant's rebuttal and continued emphasis on the "unprecedented *sixth* engine

---

[2] The allegation of pretext does not speak to the adequacy of the complaint but rather the strength of Plaintiff's claim relative to Defendant's proffered reason for termination. The Court does not address or rely on the second or third prong of the *McDonnell Douglas* analysis at the pleading stage. However, to the extent it is possible that Plaintiff's allegation of pretext may inform the stage one prima facie case, this provides support for a reasonable inference of unlawful discrimination.

failure of the season" is not relevant in this posture of the case. Plaintiff alleges that, as Technical Director, he "kept RYRE's engines at the forefront of NASCAR." Defendant's contention that Plaintiff was therefore hired to do this overstates Plaintiff's job responsibilities and does not speak to whether Plaintiff was meeting RYRE's legitimate expectations. Plaintiff's further assertion in his opposition brief that Yates had taken over valve intake supply decisions supports the Court's determination that Plaintiff has alleged enough to survive a motion to dismiss.

### C. Plaintiff adequately alleges that he is disabled for purposes of the ADA.

Pursuant to the ADA, an individual is disabled if he has: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. §12102(1)(A)–(C). Following the ADA Amendments Act of 2008 ("ADAAA"), "disability" is construed broadly and to the fullest extent allowed by the ADA's terms. Pub. L. No. 110-325, 122 Stat. 3553. Additionally, an impairment "that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C.A. §12102 (4)(C). Given the severity and duration of the restrictions on Plaintiff's mobility, the Court finds from the facts alleged that Plaintiff has sufficiently pleaded that the auto accident and resulting surgeries substantially impaired his ability to sleep (Compl. 24), walk (Compl. 22), lift (Compl. 34), and bend (Compl. 34). *See Anderson v. E & Jurisdiction Greer, Inc.*, 2009 WL 3756945, at *5-6 (E.D.N.C. 2009) (finding that the plaintiff's impairments were severe enough to constitute being disabled under the ADA).

Alternatively, it appears likely that Plaintiff was "regarded as" disabled by RYRE. Yates's alleged remarks and complaints about Plaintiff's mobility and accommodation support a finding that, "whether or not [Plaintiff] has an actual impairment," RYRE saw him as disabled. *Cline v.*

9

*Wal-Mart Stores, Inc.*, 144 F.3d 294, 302 (4th Cir. 1998) (citing 29 C.F.R. § 1630.2(1)–(2)) (finding the employer regarded the employee as disabled)).

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss be **DENIED**.

Signed: August 16, 2012

Richard L. Voorhees
United States District Judge